TUFAGA, SAO, and MAULUPE, Plaintiffs

v.

LIUFAU MATIVA, Defendant

No. 14-1903

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Vaitulitai", "Vaituliuta", "Leasi", "Alele", "Lesolo", and "Taufusi" near Aua]

September 15, 1909

B. R. PATRICK, Chaplain, U.S.N., *President of Court*, J. L. DWYER, *Associate Member*, and MAUGA, *Associate Member*

### DECISION

The Plaintiffs in this case, Tufaga, Sao, and Maulupe, of the village of Aua, commenced this action in the year 1903, claiming ownership to six pieces of land situated in the village of Aua and held in the possession of Liufau Mativa of the same place. No plans were filed but the names of the different pieces were given as

Vaitulitai
Vaituliuta
Leasi
Alele
Lesolo, and
Taufusi.

It developed during the trial that for some indefinite period, but many years before the filing of the complaint in this case, the ancestors of plaintiff had a strong claim on the land, but that beginning with about the year 1880 the

immediate predecessor of the present defendant acquired possession of the land and that he and the present defendant after his decease held this land continuously until the time of the filing of this complaint—a period of possession far in excess of the ten years limitation which has been determined to be the law of this colony. See cases of *Mauga v. Gaogao*, H.C., 2-1905; *Laapui v. Taua*, H.C., 30-1901; *Tuimalu v. Fuimaono*, H.C., 1-1900; *Pafuti v. Logo*, H.C., 11-1906.

During this period that the defendant held possession of those lands, the plaintiffs or their ancestors endeavored on two different occasions to dispossess the defendant's predecessor transferred to the plaintiffs family a portion of land known as Amouti as damages for a sanguinary assault committed upon a member of the plaintiff's family. Defendant frankly acknowledged this assault and the transfer of the land Amouti as damages for the "shedding of blood," but it is admitted by both parties that he and his predecessor retained possession of the six pieces of land mentioned in this complaint.

It appeared from the testimony that many years ago a person named Tilo Leoo owned the property in dispute. The plaintiffs claim that he was the first owner of the land, and the defendant contends that prior to the ownership of Tilo Leoo, the land was owned by the ancestors of the defendant. Both of their claims are founded solely upon tradition and the Court cannot believe the statement of one party in preference to that of the other, as neither has any solid foundation of fact.

That the property in dispute has enhanced enormously in value since the alleged entry by Liufau Timoti, father of the defendant, somewhere about the year 1880, cannot be questioned. The established form of government, under which this colony is assured of the utmost protection

of property rights has multiplied the value of real estate many times, and it would be grossly inequitable to permit the plaintiffs to come forward at this late date and obtain possession of this property after its value had increased so largely under the possession of the defendant and his predecessor. In view of the precedents quoted, and, to effect the administration of substantial justice in the premises, the Court must assume that the plaintiffs acquiesced in this possession.

The case at bar is distinguished from the case of *Vili v. Faiivae*, 1 A.S.R. 138 (Date unknown, No. 1-1906), by the fact that in this case the defendant, Liufau Mativa and his father Liufau Timoti, were not, in any sense of the word, or at any time, heads of the family of plaintiffs. They owed no duty towards the ancestors of the plaintiffs to protect them in their property rights as the Faiivae in the case last cited owed to the women Siopitu and Faatoa.

Plaintiffs claim that they were unable to seek redress in any court prior to the establishment of this Government in 1900. This Court must reject this statement. In the case of *Pafuti v. Logo*, cited supra, the Court stated:—

"The Samoan Lands Commission, created in consequence of the Tripartite Agreement of 1890, between Germany, Great Britain, and the United States, refused to disturb undisputed adverse possession running for more than ten years and was upheld for doing so by the Supreme Court of Samoa up—so far as this court knows—to the time of the division of Samoa between the United States and Germany."

The plaintiffs should have made complaint before one of the tribunals established at Apia prior to the establishment of this Government, and the fact that they have slept on their alleged rights for so long a period will most effectually debar them from asserting them at this late date.

It may be well, in this connection, to cite the following United States cases:—*Wood v. Carpenter*, 101 U.S. 135.

187

"Statutes of limitations are vital to the welfare of society and are favored in the law. They are found and approved by all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay extending to the limit prescribed is itself a conclusive bar. The bane and the antidote go together." *Naddo v. Bardon*, 51 Fed. 493.

"No doctrine is so wholesome, when wisely administered as that of laches. It prevents the resurrection of stale titles and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant that he make known his claims. It gives to the actual and longer possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds. It is a doctrine received with favor, because its proper application works out justice and equity, and often bars the holder of a mere technical right, which he has abandoned for years, from enforcing it when its enforcement will work large injury to many." See also Vol. 5, *Pomeroy's Equity Jurisprudence*, Sec. 23.

Had the plaintiffs in this case been advised of the law governing the adverse possession of lands in this colony, this action would never have been brought before the High Court. The testimony shows that Liufau, the defendant and his immediate ancestor had been in possession of the six pieces of land in controversy for a long period of years —approximately twenty-three—prior to the commencement of this action in the High Court in 1903. The possession of the defendant and his predecessor during this period was open, notorious, hostile, continued and under a claim of title. His possession included all the elements of adverse possession, and notwithstanding the contention of the plaintiffs that the original entry was unlawful and oppressive, so long a period of time has elapsed that a court of justice must assume that the original entry was acqui-

esced in, and that this claim of plaintiffs was advanced as an afterthought.

The Complaint of plaintiffs is therefore dismissed.

Let a decree issue vesting the title of the six pieces of land in controversy in the name of Liufau Mativa. Costs are assessed at $60.00, one half to be borne by plaintiffs and one half by defendant.